(No. 30245.

WALTER J. FANGROW *et al.,* Appellants. *vs.* STELLA R. BUETOW *et al.,* Appellees.

*Opinion filed January 22, 1948.*

ARTHUR ABRAHAM, and WILLIAM H. NOBLE, both of Chicago, for appellants.

JOSEPH A. McINERNEY, (ODE L. RANKIN, of counsel,) both of Chicago, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

The administrator and heirs of Lydia J. Lich, deceased, brought this action in the superior court of Cook County to set aside a contract and deed executed by Lydia in her lifetime, conveying certain property located in the city of Chicago. It seems that Lydia J. Lich conveyed this property to appellee Edward Whelan, with the understanding that it was to be conveyed back to her and to Stella R. Buetow, as joint tenants and not as tenants in common. After the death of Lydia J. Lich, this action was brought to set aside the deed and contract.

The complaint charges Stella R. Buetow with exerting undue influence and control over the actions of Lydia J. Lich, so that a fiduciary relation existed at the time the deeds were executed, and that the execution of the deeds was accomplished by fraud, duress and undue' influence. These charges were denied by the answers of appellees. On hearing the superior court entered a decree dismissing the complaint. A freehold is involved and appellants have come directly to this court for review.

Lydia J. Lich, sometime in 1935, became seized of this property, consisting of a bungalow located in the city of Chicago. She was suffering from arthritis and because of her inability to look after herself, she moved to the home of her mother and rented her property to Paul A. and Stella R. Buetow. This arrangement continued until August 8, 1942, during which time efforts had been made by

brothers of Lydia to place her in a hospital or nursing home. On August 8, 1942, she moved, by ambulance, to her property, which she had been renting to the Buetows, and took up her residence with them. At that time she reduced the rent from $40 per month to $25 per month in return for care and nursing. On August 31, 1942, Lydia J. Lich signed a contract prepared by appellee Edward Whelan, under the terms of which she agreed to execute a quitclaim deed to a third party for the purpose of creating a joint tenancy title in herself and Stella R. Buetow in this property, in which she and the Buetows were then living. It was agreed that the Buetows would pay $25 per month and furnish Mrs. Lich nursing, care, room and board during her lifetime. These deeds were prepared accordingly, were signed and bear acknowledgment as of the date of August 31, 1942. Lydia J. Lich died on October 12, 1943. During this last year and more of her life she was almost helplessly crippled.

Following her death her administrator and heirs-at-law, appellants here, commenced this action to set aside the two deeds, contending that they had been secured by reason of a fiduciary relationship between Lydia J. Lich and Stella R. Buetow, and that Stella R. Buetow controlled and dominated her. It was charged that Lydia J. Lich was mentally incompetent and that the deeds had been procured and executed by duress and undue influence.

The complaint was dismissed for want of equity. Little proof was introduced to support the allegation that Lydia J. Lich was mentally incompetent. The evidence, such as it was, consisted of statements by Emilie and Walter Fangrow, who testified that Lydia had been seized with convulsions and hysterics while she lived with them on Monticello Avenue. However, Walter Fangrow testified that he had not informed the doctor of such attacks. On the other hand the evidence is uncontradicted that Lydia, in the period from November, 1942, to September, 1943, daily

figured the timecards of a small factory, computed the wages due the workmen and weekly prepared a payroll, figuring tax deductions and the net amount due. This work was brought to her by Elaine Buetow, daughter of Stella and Paul, who was employed in the office of the factory for which this work was done. No medical testimony as to her mental incompetency was introduced. So far as appears from the record, while Lydia J. Lich was crippled physically, she was in full control of her mental faculties.

The main contention of appellants is that the Buetows were under a fiduciary relationship with Lydia J. Lich and dominated and influenced her to deed her property to Mrs. Buetow. Appellants point out her condition which made it impossible for her to get along without help. This is urged as evidence of complete domination and control which, for more than twenty days before the contract was executed, had existed.

The mother and brothers of Lydia J. Lich all testified that immediately prior to August 8, 1942, Lydia's care had become such a burden on Emilie, the mother, that efforts were made to place her in a hospital or nursing home. It is apparent too, that Lydia moved to the Buetows with the knowledge and consent of the members of her family. Evidence appears indicating that the Fangrows had made efforts to make arrangements for Lydia's care.

A lifetime acquaintance of Lydia's testified that she had visited Lydia in the Fangrow home in June or July, 1942, and that Lydia told her and witnesses of her plans to move, and stated to the witness that if she would take care of her and live in her home, the property would be turned over to her when she, Lydia, died. Other witnesses testified in substance to like conversations.

Charles W. Langley, a Salvation Army officer, minister and welfare worker, told of visiting Lydia J. Lich at the Fangrow home in July, 1942, at which time she told him of her desires to find some other place to live, stating that

she would will the home to whoever took care of her. Other similar testimony appeared on behalf of the appellees.

There is no claim here that the Buetows stood in a fiduciary relationship to Lydia J. Lich prior to August 8, 1942. In the light of the testimony of appellees' witnesses, we cannot agree that the conveyance and contract of August 31, 1942, came as a result of control or influence exercised by the Buetows. The record indicates a predetermination on the part of Lydia J. Lich, which was many times expressed, to give the house to anyone who would take care of her.

Appellants next argue that when a fiduciary or confidential relationship is established, the burden is on the one profiting by the transfer of the property to show that it was procured fairly and without undue influence. This is the rule. (*Fisher* v. *Burgiel,* 382 Ill. 42; *Seely* v. *Rowe,* 370 Ill. 336.) There being here no evidence of a fiduciary relationship, the court was correct in ruling that the burden of proof had not shifted to the Buetows.

The last error assigned is that the court erred in failing to find that appellees procured execution of the deeds as a result of fraud and undue influence. There being no fiduciary relationship, fraud will not be presumed and the burden was not on appellees to establish the fairness of the execution of the contract and deeds. There is nothing in the evidence by which appellants can be said to have sustained their allegations of fraud. The deed was duly authenticated by a notary and the rule is that to impeach a certificate the evidence must be clear and convincing. (*Prewitt* v. *Prewitt,* 397 Ill. 178; *Gritten* v. *Dickerson,* 202 Ill. 372.) On an examination of the entire record in this cause, we are convinced that the decree of the superior court dismissing the complaint was correct, and it is affirmed.

*Decree affirmed.*